UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:08CV120-3-MU
(3:03CR231-MU)


ENRIQUE BARRAGAN CONTRERAS,　)
　　　　Petitioner,　　　　　　　　)
　　　　　　　　　　　　　　　　　　)
　　　　v.　　　　　　　　　　　　　)　　　　O R D E R
　　　　　　　　　　　　　　　　　　)
UNITED STATES OF AMERICA,　　　)
　　　　Respondent.　　　　　　　　)
_____)


**THIS MATTER** is before the Court on initial review of Petitioner's Motion to Vacate, Set Aside, Or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 1 ) filed March 19, 2008. For the reasons stated herein, Petitioner's Motion to Vacate will be denied and dismissed.

## I. PROCEDURAL HISTORY

The record reveals that on June 13, 2006 Petitioner, Enrique Barragan Contreras, pled guilty conspiracy to possess with intent to distribute five kilograms or more of cocaine and 100 kilograms or more of marijuana in violation of 21 U.S.C.§§ 841 and 846.[1]

On July 7, 2005, Petitioner appeared before Magistrate Judge Carl Horn for a Plea and Rule 11 Hearing. At that time, the Court engaged Petitioner in a lengthy colloquy to ensure that his guilty plea was being tendered intelligently, knowingly, and voluntarily. The Court outlined the charges as set forth in the Indictment. Petitioner confirmed that he had discussed these charges with his

---

[1] Count Five, possession with intent to distribute cocaine in violation of 21 U.S.C. § 841 and 18 U.S.C. § 2, count seven, using and carrying one or more firearms in violation of 18 U.S.C. § 924(c)(1) and count eight, possession with intent to distribute cocaine base in violation of 21 U.S.C. § 841, were dismissed at sentencing.

1

attorney and that he understood them. (Transcript of Plea and Rule 11 Hearing at 3-5.) The Court then patiently answered many of Petitioner's questions regarding his guilty plea. (Id. at 6-12.) The Court asked counsel for the Government to summarize the terms of the plea agreement. Counsel for the Government explained the essential terms including that Petitioner stipulated that he possessed a dangerous weapon in connection with the offense contained in Count One of the Indictment. (Id. at 14-15.) The Court then asked Petitioner if he understood the terms of the Plea Agreement as explained by Government counsel and if he agreed with such terms. Petitioner stated that he understood and agreed. (Id. at 17.) Government counsel also reviewed the potential punishment that the Petitioner faced explaining that Petitioner faced a minimum mandatory sentence of ten years in prison and a maximum of life as a result of his guilty plea. (Id. at 15.) The Court then asked the Petitioner if that was his understanding of the punishment for the charges to which he was pleading. Petitioner responded in the affirmative to the Court's question. (Id. at 17.) The Court explained to the Petitioner that he had the right to plead not guilty and if Petitioner chose to plead not guilty, he would have the right to a trial by jury as well as numerous trial rights. (Id. at 13-14.) Petitioner stated that he understood these rights and that he chose to plead guilty and told the Court he was pleading guilty because he was, in fact, guilty of the crime charged in the Indictment. (Id. at 14.) Petitioner also told the Court that he had not been coerced into pleading guilty and stated that he had no other questions. (Id. 18-19.) Petitioner also confirmed that he was satisfied with the representation of his attorney. (Id. at 18.) The Court then accepted Petitioner's plea, finding that it was freely and voluntarily made and that Petitioner had an understanding of the nature of the charges and the consequences of his plea. (Id. at 20.)

On May 24, 20066, Petitioner appeared before this Court for sentencing. The Court accepted

Petitioner's plea finding that it was knowingly and voluntarily made, with an understanding of the charges, potential penalties and the consequences of the plea. (Sentencing Transcript at 3-4.) Petitioner acknowledged that he had received a copy of his Presentence Report (PRS) and that he had reviewed and discussed it with his attorney. (Sentencing Transcript at 4.) The Court found that the PSR furnished a factual basis for the plea and allowed counsel to argue regarding the drug quantity. The Court accepted and adopted the findings and calculations contained in the PSR and sentenced Petitioner to 168 months imprisonment and five years of supervised release. (Id. at 27.)

Petitioner appealed his sentence and conviction to the Fourth Circuit Court of Appeals. Petitioner's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), stating that there were no meritorious issues for appeal but raising the question of whether Petitioner's motion to substitute counsel was properly denied. Petitioner filed a pro se supplemental brief raising the following issues: (1) whether the search of his home was proper, (2) whether his sentence was properly enhanced for possession of a firearm, and (3) whether the district court correctly calculated the amount of marijuana attributable to him. The Fourth Circuit affirmed Petitioner's conviction and sentence in an unpublished decision on December 19, 2006. Petitioner did not file a petition for certiorari with the United States Supreme Court.

On March 19, 2008 Petitioner filed the instant Motion to Vacate alleging that his counsel was ineffective for (1) failing to argue during plea negotiations, during his Plea and Rue 11 Hearing and at Sentencing that he had no knowledge that his wife or co-defendant possessed firearms until after the fact; (2) failing to object to the two-level gun enhancement on the grounds that there was insufficient evidence of constructive possession to support the enhancement and (3) failing to argue for application of the safety valve.

## II. ANALYSIS

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims that his counsel was ineffective for several reasons. First, Petitioner contends that counsel was ineffective in failing to argue that he had no knowledge that his wife and co-defendant possessed firearms until after the fact. Next, Petitioner alleges that his counsel was ineffective in failing to object to the two-level gun enhancement on the grounds that there was insufficient evidence of constructive possession to support the enhancement. Finally, Petitioner contends that counsel was ineffective in failing to argue at sentencing that Petitioner was eligible for the safety valve.

With respect to claims of ineffective assistance of counsel, a petitioner must show that counsel's performance was constitutionally deficient to the extent that it fell below an objective standard of reasonableness, and that he was prejudiced thereby. Strickland v. Washington, 466 U.S. 687-91 (1984). In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance. Id. at 689; see also Fields v. Attorney Gen. Of Md., 956 F.2d 1290, 1297-99 (4th Cir.1992).

Under these circumstances, the petitioner "bears the burden of proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If the petitioner fails to meet this burden, a reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing, Strickland, 466 U.S. at 697.

Furthermore, in considering the prejudice prong of the analysis, the Court must not grant relief solely because the petitioner can show that, but for counsel's performance, the outcome would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855

(1999). Rather, the Court "can only grant relief under ... Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364 U.S. 364, 369 (1993).

More critically here, a petitioner who alleges ineffective assistance of counsel following entry of a guilty plea has an ever higher burden to meet. See Hill v. Lockhart, 474 U.S. at 53-57; Fields, 956 F.2d at 1294-99; and Hooper v. Garraghty, 845 F.2d 471, 475 (4th Cir.), cert. denied, 488 U.S. 843 (1988). The Fourth Circuit described the petitioner's additional burden in a post-guilty plea of ineffective assistance of counsel as follows:

> When a [petitioner] challenges a conviction entered after a guilty plea, [the] "prejudice prong of the [Strickland] test is slightly modified. Such a defendant must show that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."

Hooper, 845 F.2d at 475; accord Hill, 474 U.S. at 59; and Fields, 956 F.2d at 1297.

In evaluating post-guilty plea claims of ineffective assistance, statements previously made under oath affirming satisfaction with counsel are deemed binding in the absence of "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299, citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977). Moreover, statements made during Rule 11 proceedings constitute strong evidence of the voluntariness of a defendant's plea. United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991).

A presumption exists that counsel is competent. A defendant seeking post-conviction relief bears a heavy burden to overcome this presumption. And the presumption is not overcome by conclusory allegations. Carpenter v. United States, 720 F.2d 546 (8th Cir. 1983). Indeed, the defendant bears an even heavier burden where, as here, the claim of ineffective assistance of counsel follows the entry of a guilty plea.

5

Turning to Petitioner's claims that his attorney was ineffective for failing to argue that Petitioner had no knowledge that his wife or co-defendant possessed firearms, for failing to object to the two-level enhancement for the gun enhancement and failure to argue for the applicability of the safety valve, the record simply does not support any of Petitioner's arguments.

First, Petitioner does not argue that but for counsel's alleged errors, he would not have pled guilty and would have insisted on going to trial. Therefore, Petitioner's claims against counsel fail for this reason. Moreover, a review of the Plea Agreement reveals that Petitioner specifically stipulated to a dangerous weapon enhancement pursuant to § 2D1.1(b)(1) which increased his base offense level by two levels. (See Plea Agreement ¶ 7(b).) Such stipulation was negotiated by counsel in exchange for a dismissal of the firearm charge contained in Count Five of the Indictment.[2] Given the stipulation to the gun enhancement, there would have been no logical reason for counsel to argue that Petitioner was not aware that his wife and co-defendant possessed firearms or for counsel to object to the gun enhancement. Furthermore, the stipulation regarding the gun enhancement precluded Petitioner from eligibility for the safety valve.[3] [4] Petitioner agreed to all of

---

[2] The Court notes that a conviction of Count Five would have increased his sentence by a mandatory additional five-years consecutive. Although Petitioner argues that his sentence was increased by thirty-three months as a result of the two-level increase due to the dangerous weapon enhancement, that is still twenty-seven less months than he would have received if convicted of the § 924(c) Count.

[3] The safety valve provision of 18 U.S.C. §3553(f) permits a district court to impose a Guidelines sentence below the applicable statutory minimum if the court finds that the defendant meets certain criteria. To be eligible for sentencing under the safety valve a defendant must meet the following five statutory requirements: (1) the defendant has no more than one criminal history point, (2) the defendant did not use violence or credible threats of violence or possess a firearm in connection with the offense, (3) the offense did not result in death or serious bodily injury, (4) the defendant was not an organizer or leader of others in this offense, and (5) the defendant provided truthful information to the Government concerning the crime. See 18 U.S.C. § 3553(f); U.S.S.G. § 5C1.2. The burden is on the defendant to prove that he has meet all five

6

the terms of the plea agreement and does not now contest his guilty plea. Petitioner's claims that counsel was ineffective are contradicted by the terms of his plea agreement and are therefore denied and dismissed.

### III. ORDER

**THEREFORE, IT IS HEREBY ORDERED** that:

(1) Petitioner IFP application (contained within Motion to Vacate) is denied as moot since there is no filing fee for a Motion to Vacate; and

(2) Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is DENIED and DISMISSED. (Document No.1).

---

safety valve requirements. See <u>United States v. Beltran-Ortiz</u>, 91 F.3d 665, 669 (4th Cir. 1996); see also, <u>United States v. Ivester</u>, 75 F.3d 182, 184-85 (4th Cir. 1996) (holding that it is not sufficient that a defendant stands ready to disclose fully if the Government were to approach him to seek information; the plain language of the safety valve provision requires that a defendant must demonstrate that he has fully and truthfully disclosed even if he has never been approached by the Government), <u>cert</u>. <u>denied</u>, 518 U.S. 1011 (1996).

[4] The Court notes that notwithstanding the stipulation regarding the dangerous weapon enhancement, Petitioner likely would have also been precluded from receiving the benefit of he safety valve because evidence suggested he did function in a managerial role in the conspiracy (Sentencing Transcript at 6), and because he was unwilling to cooperate with the Government (Plea and Rule 11 Hearing Transcript at 5.) The Court does note that Petitioner did not receive an enhancement for being a leader or organizer because the parties agreed pursuant to the plea agreement that no enhancements, other than those specifically enumerated in the Plea Agreement, would apply.

**SO ORDERED**.

Signed: April 1, 2008

Graham C. Mullen
United States District Judge